Lawrence S. Vadner and Eleanor Vadner v. Commissioner.
Vadner v. Commissioner
Docket No. 47271.
United States Tax Court
T.C. Memo 1955-218; 1955 Tax Ct. Memo LEXIS 123; 14 T.C.M. (CCH) 866; T.C.M. (RIA) 55218; July 29, 1955
*123 Lawrence S. Vadner, 126 Dartmouth Rd., Bala-Cynwyd, Pa., pro se. Max J. Hamburger, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent determined a deficiency of $3,169.24 in the petitioners' income tax for 1949. The issues presented by the pleadings are the correctness of the respondent's action (1) in determining that consulting fees in the amount of $12,000 constituted income to petitioner Lawrence S. Vadner, (2) in disallowing as a deduction for entertainment expense an amount $40of for amusement and liquor taxes, (3) in determining that the fair market value of a lot donated by petitioners and deducted as a contribution was $350 at the time donated, and (4) in determining the cost or other basis of certain lots sold in 1948 and with respect to which the petitioners carried forward a long-term capital loss from 1948 to 1949. At the hearing the petitioners conceded issue (1) and on brief they have conceded issue (2). As to issue (3), the parties have stipulated that the value of the donated lt was $450. Only issue (4) remains for determination. Findings of Fact The petitioners are husband and wife and reside *124 in Bala-Cynwyd, Pennsylvania. Their Federal income tax return for 1949 was filed with the collector for the first district of Pennsylvania. During 1925 petitioner Lawrence S. Vadner, sometimes hereinafter referred to as petitioner, went to Ormond Beach, Florida, where he was heavily engaged in the construction business until the autumn of 1930. In December 1926 he entered into an arrangement with Ormond Beach Guaranteed Investment Company, sometimes hereinafter referred to as the Investment Company, all the stock of which was owned by Lars E. Bostrom and his wife, Lucile Bostrom, to do certain development work in a subdivision owned by the Investment Company in Ormond Beach and known as Seminole Park. The work to be done by petitioner consisted of grading, road construction, laying sidewalks, installing water mains, hydrants and curbs and planting trees between the sidewalks and curbs. Thereafter, between December 1927 and the summer of 1930, petitioner performed development work under the arrangement in the total amount of $36,000. Under the development arrangement the petitioner was to be paid for the work as stated parts of it were completed. Since the Investment Company was *125 unable to pay cash for the contemplated work, an escrow arrangement was entered into by it with a local bank in 1926 or 1927 whereby it deposited with the bank purchase money notes of a total face amount of $19,500 acquired by it from the sale of lots in the Seminole Park subdivision and from the sale of certain others which were not in that subdivision. These notes bore Bostrom's endorsement and were to be delivered by the bank to petitioner as and when stated portions of the work were completed and approved. The petitioner completed sufficient of the development work to become entitled to, and did, receive the $19,500 of notes which had been placed in escrow and thereupon became the owner of them. For further work done by petitioner under the development arrangement, he received notes of the Investment Company as follows: (1) A note for $1,500, dated May 31, 1928, payable on or before 3 years after date, bearing interest at the rate of 8 per cent per annum, and secured by a mortgage on Lots, 25, 26, 27 and 30 in Block D in Seminole Park. Upon each payment of $500 on the principal of the note, the Investment Company was entitled to have any one of the foregoing lots selected by *126 it released from the mortgage. (2) A note for $2,300, dated July 10, 1928, payable on or before 3 years after date, bearing interest at the rate of 8 per cent per annum, and secured by a mortgage on Lot 13 in Block B, Lot 31 in Block D, and Lots 31, 34 and 35 in Block E, all in Seminole Park. Upon each payment of $550 on the principal of the note, the Investment Company was entitled to have any one of the foregoing lots selected by it released from the mortgage. (3) A note for $2,500, dated May 15, 1930, payable on or before 5 years after date, bearing interest at the rate of 8 per cent per annum, and secured by a mortgage on Lot 11 in Block C, Lots 18, 19, 20 and 29 in Block D and Lots 8, 11, 12 and 20 in Block E, all in Seminole Park. Upon each payment of $300 on the principal of the note, the Investment Company was entitled to have any of the foregoing lots selected by it released from the mortgage. Petitioner Eleanor Vadner was named payee of each of the foregoing notes and mortgagee in each of the mortgages. During the summer of 1930 the petitioner completed the last of the work required of him by the development arrangement. This work, in the amount of $10,200, was done on *127 open account. Upon completion of this work petitioner attempted to obtain cash for it but was unable to obtain the cash either from the Investment Company or from the Bostroms, who owned all of its stock. Instead he was offered purchase money notes of lot purchasers endorsed by Bostrom which he refused to accept. The basis for his refusal was that lot purchasers who had given the $19,500 of notes which petitioner previously had received for work done had returned to the North, did not pay their notes, that attempts at collection had been expensive and fruitless, and Bostrom was without cash to make good his endorsement of them. The most the petitioner was able to obtain in the way of cash was the interest on the $6,300 of notes of the Investment Company. In the foregoing situation, and in order to bring an end to his dealings with the Investment Company and Bostrom, the petitioner on June 30, 1932, entered into an agreement with the Investment Company and Bostrom whereby petitioner transferred to the Investment Company the $19,500 of purchase money notes given by lot purchasers and which had been endorsed by Bostrom and were then in default, returned to the Investment Company its *128 notes of May 31, 1928, July 10, 1928 and May 15, 1930, totaling $6,300, and had satisfactions of the mortgages securing such notes made a matter of public record, and cancelled the open account of $10,200 owing to him by the Investment Company. In consideration for the foregoing action of the petitioner, the Investment Company on the same day executed to petitioner Eleanor Vadner a warranty deed to 18 lots in Seminole Park as follows: Lot 13 in Block B. Lots 17, 18, 19, 20, 25, 26, 27, 29, 30 and 31 in Block D. Lots 8, 11, 12, 20, 21, 31 and 34 in Block E. Legal fees, revenue stamps and recording fees paid by petitioner and allocable to Lots 11 and 12 in Block E above were $3.41. Subsequent to June 30, 1932, petitioner expended $169 in clearing, grading and planting trees on the foregoing 2 lots. In their joint income tax return for 1948, the petitioners reported as the sale of a long-term capital asset the sale in December 1948 of Lots 11 and 12 in Block E for $400. The cost or other basis of the lots was shown as $5,000 for the 2 lots, thus showing a long-term capital loss of $4,600. The petitioners carried forward to 1949 and deducted in their joint income tax return for *129 that year the portion of the reported loss for 1948 which was not used in 1948. In determining the deficiency here involved, the respondent determined that the cost or other basis to petitioners for Lots 11 and 12 in Block E was $350 per lot instead of $2,500 per lot as reported by petitioners in their 1948 return and, accordingly, disallowed any deduction for 1949 of the long-term capital loss on the lots carried forward by petitioners from 1948 to 1949. Opinion The petitioners contend that the initial cost of the 18 lots acquired from the Investment Company on June 30, 1932, was $36,000, composed of $19,500 of purchase money notes received from the Investment Company for work done by petitioner, the $6,300 of notes of the Investment Company executed in 1928 and 1930 for work done by petitioner, and the open account of $10,200 owing by the Investment Company also for work done by petitioner, and that the initial cost of each lot therefore was $2,000. The petitioners also contend that the claimed initial cost of $4,000 of Lots 11 and 12 in Block E, which were sold in 1948, is to be further increased by $601.76, composed of the following amounts: $11.88 for legal, recording and *130 title examination fees, $169 as outlays for clearing and grading the lots and planting trees thereon, all subsequent to June 30, 1932, and $420.88 for accrued interest. The latter item is explained as being the interest accrued on the $19,500 and the $6,300 of notes and the $10,200 open account. The respondent takes the position that the only consideration given by petitioners for the 18 lots was $6,300 represented by the notes in that amount executed by the Investment Company in 1928 and 1930, thus making the cost basis of the lots $350 each. The respondent contends that the notes, totaling $6,300, were given by the Investment Company for cash loans made to it by Mrs. Vadner and not for work performed for it by petitioner. From a consideration of all the evidence bearing on the point, we have found that, as consideration for the 18 lots, the petitioner transferred to the Investment Company the $19,500 of purchase money notes and the notes, totaling $6,300, executed by that company in 1928 and 1930, all received by petitioner for work done by him for the company, and cancelled the open account of $10,200 owing to the petitioner for work done by him for the company. The petitioners, *131 in substance, are requesting that items of income from work performed by petitioner, namely, notes and an open account, totaling $36,000, be treated as the cost of the 18 lots and that with respect to 2 of such lots they be allowed to deduct losses computed on the basis of proportional parts of such cost. The petitioners had the burden of establishing facts which would warrant the action requested but have failed to discharge that burden. The record not only fails to disclose the method of accounting, whether cash receipts and disbursements or accrual or some other method, employed by petitioner during the years in which he performed work for the Investment Company and received the notes and open account in question, but also fails to show that the $36,000 or any part of it ever was included in an income tax return of the petitioner for any year. A taxpayer may not take a loss in connection with an income item unless such item previously has been reported as income in the appropriate tax return. ; ; ; . It may well *132 be that during the years in which the petitioner performed work for the Investment Company he kept his accounts and reported income by some method under which the amounts charged, or the contract prices, for work performed were not treated as income but under which any costs or outlays incurred in performing the work were deducted as expenses from income arising from other work performed. In such an event the initial cost of the 18 lots would not be $36,000 but would be zero. If, despite the fact that such is not shown by the record, it be assumed that during the years the petitioner performed the work in question for the Investment Company, he kept his accounts and reported income on the accrual basis and the entire amount of the $36,000 was accrued on his books and reported as income in petitioners' returns for the appropriate years, the petitioner still would not be entitled to a holding that the initial cost of the 18 lots was $36,000. When, on June 30, 1932, he exchanged the notes of $19,500 and $6,300 and cancelled the open account of $10,200 for the 18 lots, an event with tax consequences occurred. The petitioner then realized taxable gain to the extent that the fair market *133 value of the lots was in excess of $36,000 or sustained deductible loss to the extent that such fair market value was less than $36,000. In either event the fair market value of the lots became the basis of the lots in the hands of petitioner for determining gain or loss upon their later sale or exchange. . The record not only fails to show that the lots had a fair market value of $36,000 at that time but also fails to show what their fair value was. During the period from 1926 to the early 1930's the real estate market in Florida was in a depressed condition. Purchases of real estate declined and in general the value of unimproved land had collapsed. Conditions in the Ormond Beach area appear to have been so unfavorable that the purchasers of lots from the Investment Company had defaulted on all the purchase money notes in the amount of $19,500 which petitioner had received from the Investment Company, and petitioner was unable to collect from them. The respondent has determined that petitioner's cost or other basis for Lots 11 and 12 in Block E was $350 each. On the record before us we can not find that those lots or any other of the *134 18 lots had a fair market value in excess of that amount. In addition to the cost or other basis of $350 each determined by respondent for Lots 11 and 12 in Block E, or a total of $700, the petitioner is entitled to treat the following amounts as part of his basis: $169 for clearing, grading and planting trees on the 2 lots and $3.41 as the allocable portion of legal fees, revenue stamps and recording fees paid by petitioner in connection with the acquisition of the lots. Since the record does not disclose that the accrued interest of $420.88, claimed by petitioners as part of the cost of Lots 11 and 12 in Block E, was ever reported as income in any year, such amount may not be treated as a part of the cost or other basis of those lots. Decision will be entered under Rule 50.